IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MICAH CAMPBELL,<br>Plaintiff,<br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA AT GREENSBORO, UNIVERSITY OF NORTH CAROLINA BOARD OF GOVERNORS, TINA E. VIRES, in her individual capacity, and SUSAN WISE, in her individual capacity,<br>Defendants. | 1:24-CV-948 |

**ORDER**

This matter is before the Court on the Recommendation of the Magistrate Judge. The Recommendation suggests dismissing Plaintiff Micah Campbell's claims against the University of North Carolina at Greensboro ("UNCG"), University of North Carolina Board of Governors ("Board of Governors"), Tina Vires, and Susan Wise for: (1) violation of the Americans with Disabilities Act ("ADA"); (2) violation of Section 504 of the Rehabilitation Act; (3) violation of Title VI of the Civil Rights Act; (4) supervisor liability under 42 U.S.C. § 1983; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress. *Recommendation*, D.E. 24 (May 22, 2026). This Court adopts the Recommendation as described below and dismisses the action.

**LEGAL STANDARD**

Any party may object to a magistrate judge's proposed findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id*. Mr. Campbell filed ten specific objections to the Recommendation. *Objection to Recommendation*, D.E. 26 (June 4, 2026). Because of these objections, the Court will conduct a de novo review.

## FACTUAL BACKGROUND[1]

Taking Mr. Campbell's assertions of the facts as true, as we must at this stage, Mr. Campbell, an individual suffering from post-traumatic stress disorder, began attending UNCG in Spring of 2024. *Second Amended Complaint*, D.E. 14, at ¶¶ 9, 13 (March 28, 2025). UNCG approved his accommodation request that allowed Mr. Campbell's service dog, Aspen, to live in student housing and accompany Mr. Campbell on campus. *Id*. at ¶¶ 14–16.

Nevertheless, Mr. Campbell identifies five instances between January 2024 and March 2024 where he alleges he was treated unlawfully because of Aspen.

First, on January 5, 2024, an information desk employee asked Mr. Campbell what tasks Aspen performed. *Id*. at ¶ 17. When Mr. Campbell did not immediately respond, the employee explained that some people pretend they have a disability to allow an untrained dog to come with them and that he was asking because allowing an untrained animal in can require them to shut down food facilities. *Id*. at ¶ 18. Mr. Campbell reported this incident to Susan Wise, the Assistant Director of the Office of Accessibility Resources and Services. *Id*. at ¶ 22. Ms. Wise acknowledged the seriousness of the matter and agreed to investigate it. *Id*.

Second, on January 16, 2024, a UNCG employee asked Mr. Campbell about the necessity of Aspen, and a student called out to Aspen and tried to pet her. *Id*. at ¶¶ 23–24. Mr. Campbell reported this incident to Ms. Wise. *Id*. at ¶ 28. Ms. Wise responded that UNCG would work on training staff and students in service animal policies, procedures, and best practices. *Id*.

Third, on January 25, 2024, a UNCG campus dining employee stopped and talked to Aspen. *Id*. at ¶ 29. Mr. Campbell reported this incident to Ms. Wise. *Id*. at ¶ 30. Ms. Wise advised Mr. Campbell that UNCG was working on retraining staff in the food areas and that flyers had been posted around campus to educate students about appropriate interactions with service animals. *Id*. at ¶ 32. Ms. Wise also asked Mr. Campbell to speak with Aimee Trippell, a manager in dining services, but Mr. Campbell declined. *Id*. at ¶ 33.

Fourth, on February 16, 2024, Mr. Campbell was attending a baseball game on campus at UNCG, and an "unidentified" African-American male security guard followed Mr. Campbell, an African-American male, throughout the facility, inquired about Aspen's status as a service animal, and "asked impermissible questions about the nature of [Mr. Campbell's] disability." *Id*. at ¶¶ 34–35. At least three white

[1] Mr. Campbell does not challenge the factual background as stated in the Recommendation. However, for readability, this Court has restated the facts.

individuals had dogs with them at the game and were not questioned. *Id*. at ¶ 37. Mr. Campbell reported this incident to Ms. Wise, and she encouraged him to contact the security guard's employer to express his concerns. *Id*. at ¶ 39.

Fifth, on March 27, 2024, a UNCG campus dining employee asked Mr. Campbell if Aspen was a seeing eye dog and later, "Which type is she?" *Id*. at ¶ 40. He also stated that he did not like dogs. *Id*. Mr. Campbell reported this incident to Justin Meadows, and he recommended that Mr. Campbell speak with the management team of dining services. *Id*. at ¶ 41.

Mr. Campbell later reported these incidents to Tina Vires, the Director of the Office of Accessibility Resources and Services. *Id*. at ¶ 45. In response to the reported incidents, Ms. Vires indicated that she was working to have flyers placed around campus to increase awareness of service animals. *Id*. at ¶ 48.

As a result of the incidents, Mr. Campbell limited his use of UNCG facilities, benched himself from UNCG's Esports CS2 team, and moved off campus. *Id*. at ¶¶ 51–54. As a result of moving off campus, he was no longer eligible for student health insurance. *Id.* at ¶ 54.

## DISCUSSION

### I. Objection One: Failure to Plead Disability Discrimination under the ADA and Rehabilitation Act

Mr. Campbell first objects that the Recommendation applied the wrong legal standard to his ADA and Rehabilitation Act claims. Mr. Campbell argues that *Koon v. North Carolina*, 50 F.4th 398 (4th Cir. 2022) requires not just access but meaningful access. D.E. 26, at pp. 3–4. But this is the standard that the Recommendation applied. D.E. 24, at p. 9. The Recommendation quotes *Koon*, 50 F.4th at 406, stating, "[t]hus, 'we ask whether a disabled person was denied "meaningful access" to the benefit.'" *Id.*

Mr. Campbell then argues that he was denied meaningful access because UNCG's actions caused him to dramatically reduce the activities he engaged in on campus. D.E. 26, at pp. 3–4. But the Recommendation addresses this, finding that UNCG employees did not violate his rights because they asked permissible questions. D.E. 24, at p. 12. The Recommendation also points out that even if some of the employees were rude or insensitive, the law does not impose a "civility code," and these comments simply did not deny Mr. Campbell meaningful access to the benefits. *Id*.

Mr. Campbell complains about the Recommendation's application of the two-question rule, D.E. 26, at pp. 5–6, but this Court agrees with the Recommendation and adopts its analysis on this issue.

Mr. Campbell criticizes the Recommendation's characterization of the comments as mere rudeness or incivility, D.E. 26, at pp. 4–5, but this Court agrees with the Recommendation's analysis. The Court does note that Mr. Campbell alleges that the security guard at the baseball game "asked impermissible questions about the nature of [Mr. Campbell's] disability." D.E. 14 at ¶ 35. But Mr. Campbell must show that he was denied meaningful access to a benefit. The security guard did not ask Mr. Campbell to leave the stadium or indicate he could not use his dog. Indeed, Mr. Campbell does not even allege he left. Therefore, nothing suggests that these "impermissible questions" denied Mr. Campbell meaningful access to the benefits of the stadium.

II. <u>Objection Two: Application of an Overly Demanding Hostile-Environment and Constructive-Exclusion Standard</u>

Mr. Campbell's second objection argues that the Recommendation was too strict in its analysis of his hostile environment claim. D.E. 26 at 6–8. However, any hostile-environment claim is not a separate claim but rather a reason why a person might have been denied meaningful access to benefits under *Koon*. *See* 50 F.4th at 406. For instance, in *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, the Fourth Circuit recognized that a claim for disability-based harassment against a high school student could proceed where "the disability-based harassment was sufficiently severe, pervasive, and objectively offensive that it effectively deprived him of access to educational benefits and opportunities at school, and that the school knew about the disability-based student-on-student harassment and was deliberately indifferent to it." 819 F.3d 69, 76 (4th Cir. 2016) (citation modified). Notably, the focus was on whether the harassment "deprived him of access to educational benefits and opportunities," not the elements in a hostile work environment claim. *Id.* (citation modified) As discussed above and explained in the Recommendation, D.E. 24, at pp. 11–12, Mr. Campbell has not met this standard.

The Recommendation also analogized Mr. Campbell's claim to a constructive discharge case and analyzed whether "the circumstances were 'so intolerable that a reasonable person would resign.'" *Id.* at 12–13 (quoting *Decoster v. Becerra*, 119 F.4th 332, 339–40 (4th Cir. 2024)). However, here, the standard is whether the harassment "effectively deprived him of access to educational benefits and opportunities at school." *S.B. ex rel. A.L.,* 819 F.3d at 76 (citation modified). The Recommendation's analysis of the facts correctly explains why Mr. Campbell cannot meet this high standard. D.E. 24, at p. 13. He has not shown that a reasonable person

faced with these questions and encounters would have decided that they had no actual access to these benefits.

III. Objection Three: Equating "Some Response" With A Legally Adequate Response

Mr. Campbell next objects to the Recommendation's conclusion that deliberate indifference is not plausibly alleged. However, because Mr. Campbell has not shown a violation of his rights, there is no need to address deliberate indifference here. *See Koon*, 50 F.4th at 405 ("If there wasn't any ADA violation (or any substantially likely ADA violation), there was nothing to be deliberately indifferent about.")

The Recommendation's alternative analysis of deliberate indifference is correct here; even if Mr. Campbell had shown a violation of rights, he still could not have met the deliberate indifference standard. Thus, this Court adopts the Recommendation's analysis of deliberate indifference as an alternative basis to dismiss these claims. *See* D.E. 24, at pp. 13–14.

IV. Objection Four: Dismissal of the Title VI Race Discrimination Claim

Mr. Campbell objects that his allegations support an inference of race discrimination. D.E. 26, at pp. 9–12. As the Recommendation explains, the allegation that Mr. Campbell was treated differently than other white attendees, alone, is not sufficient to support a reasonable inference of discrimination. D.E. 24, at p. 18. Mr. Campbell has not alleged specific facts that would establish that the white attendees were similarly situated. For instance, he does not say where in the stadium they were sitting, whether they passed by the same guard when they came in, whether the guard noticed them, or what kinds of dogs they had. Nor does he allege any additional facts to show that the African-American guard had a discriminatory motive for asking him questions. Without more, this is not enough.

Mr. Campbell also argues that institutional control and deliberate indifference were prematurely decided. D.E. 26, at pp. 9–12. The Recommendation correctly points out, "to hold an institution liable for the conduct of its employees, the plaintiff 'must plausibly plead that [the institution] acted with deliberate indifference to the intentional discrimination of its *agents*.'" D.E. 24, at p. 18 (quoting *Lucas v. VHC Health,* 128 F.4th 213, 221–222 (4th Cir. 2025)) (emphasis added). Mr. Campbell's complaint does not allege how the "unidentified" African American security guard was related to UNCG. It states only that "UNCG's staff and agents unlawfully questioned [him] . . . ." D.E. 14, at ¶ 129. Nor does Mr. Campbell allege that Ms. Wise ignored his complaint about the security officer. Therefore, the Recommendation's analysis of the facts correctly explains why Mr. Campbell did

not plausibly plead a Title VI race discrimination claim. This Court agrees with the Recommendation and adopts its analysis on this issue.

## V. Objection Five: Dismissal of the Section 1983 Supervisory Claim

Next, Mr. Campbell objects that his Section 1983 claim is based on violations of the ADA, Rehabilitation Act, Title VI, equal-protection, and supervisory liability, and the Section 1983 claim analysis should not rest on the "assumed failure" of those claims. D.E. 26, at p. 12. The Recommendation explains that supervisory liability requires a plaintiff to plead, among other things, "that the supervisor had actual or constructive knowledge that [her] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional [or other legal] injury to citizens like the plaintiff." D.E. 24, at p. 21 (quoting *Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (citation modified)). The Recommendation's analysis of that element did not only rely on the failure of Mr. Campbell's ADA and Section 504 claims; it found that "Campbell's complaints did not evince widespread discrimination despite his conclusory allegations to the contrary" and "neither Wise nor Vires were deliberately indifferent to or tacitly authorized disability discrimination against Campbell, as alleged." *Id*. at 22. The Recommendation's analysis and conclusion are supported by the record. Therefore, this Court adopts the Recommendation's reasoning on this issue.

## VI. Objection Six: Qualified Immunity

Mr. Campbell objects to the Recommendation's alternative qualified-immunity holding. D.E. 26, at pp. 13–14. The ruling is just that: an alternative holding. Because Mr. Campbell has not sufficiently alleged a § 1983 claim against Ms. Wise or Ms. Vires, this Court does not need to consider whether qualified immunity would apply.

## VII. Objection Seven: Dismissal of Intentional Infliction of Emotional Distress Claim

Mr. Campbell objects to the dismissal of his intentional infliction of emotional distress claim. D.E. 26, at pp. 14–15. Mr. Campbell does not make any new arguments in support of his intentional infliction of emotional distress claim. *See id*. Instead, he argues that the facts alleged are sufficient to plead intentional infliction of emotional distress. *See id*. As explained in the Recommendation, the standard for intentional infliction of emotional distress is high, and Mr. Campbell has not met that standard. D.E. 24, at pp. 24–27. Therefore, the Recommendation correctly dismisses the claim, and this Court adopts its reasoning.

## VIII. Objection Eight: Dismissal of Negligent Infliction of Emotional Distress Claim

Mr. Campbell also objects to the dismissal of his negligent infliction of emotional distress claim, arguing that the Recommendation improperly concludes that he failed to plead a legal duty because the student-university relationship alone does not create a special relationship and the ADA and Rehabilitation Act do not independently create a negligence duty. D.E. 26, at p. 16.

The Recommendation thoroughly explains that Mr. Campbell failed to allege a special student-university duty or a duty based on the ADA and Rehabilitation Act. D.E. 24, at pp. 28–29. However, Mr. Campbell's claim is against Ms. Wise and Ms. Vires individually. In his complaint, he alleges that:

> Wise and Vires owed Plaintiff a duty of care. Specifically, as university employees in positions of authority, particularly those tasked with addressing the needs of sensitive populations such as disabled individuals, Defendants were expected to act reasonably to protect the health, safety, and welfare of their students, including Plaintiff. This duty included ensuring compliance with federal and state disability laws, responding appropriately to complaints of discrimination, and fostering an environment free from harassment and harm.

D.E. 14, at ¶ 155. This bare assertion of duty is not sufficient. The first element of a negligent infliction of emotional distress claim "requires allegations that the defendant failed to exercise due care in the performance of some *legal duty* owed to [the] plaintiff under the circumstances." *Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 148 (2013) (citation modified) (emphasis added). "A duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Guthrie v. Conroy*, 152 N.C. App. 15, 25 (2002) (citation modified). Mr. Campbell fails to identify any obligation recognized by law requiring Ms. Wise and Ms. Vires to conform to a certain standard of conduct. Therefore, he has not plausibly alleged a negligent infliction of emotional distress claim.

Mr. Campbell also argues that he has alleged foreseeable harm. D.E. 26, at p. 17. Because the Recommendation concluded that Mr. Campbell had not alleged a legal duty, the first element of a negligent infliction of emotional distress claim, the Recommendation did not address whether Mr. Campbell alleged foreseeable harm.

This Court also declines to address his alleged foreseeable harm since he did not plead a legal duty, the first element of the claim.

IX. Objection Nine: Punitive Damages

Mr. Campbell objects to "any portion of the Recommendation that treats the unavailability of punitive damages under the ADA, Rehabilitation Act, or Title VI as a basis supporting dismissal of the substantive claims." D.E. 26, at pp. 17–18. The Recommendation does not treat the unavailability of punitive damages as a basis for dismissal of any of the substantive claims. *See* D.E. 24, at p. 30.

X. Objection Ten: Dismissal With Prejudice

Lastly, Mr. Campbell objects to the Recommendation that this action be dismissed with prejudice and asks for leave to file a further amended complaint. D.E. 26, at pp. 18–19. As the Recommendation states, "district courts are not required to give plaintiffs one without-prejudice ruling on the merits before dismissing with prejudice." D.E. 24, at p. 30 (quoting *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022)). Additionally, "[w]hile [the Fourth Circuit] generally encourage[s] amendment, there are, of course, circumstances that justify denying a plaintiff the opportunity to try again. [The Fourth Circuit] ha[s] laid out three such justifications for denying leave to amend: prejudice to the opposing party, bad faith, or where the amendment would be futile." *United States ex rel. Nicholson*, 42 F.4th at 197. Mr. Campbell has filed three complaints and has still failed to state a claim. Therefore, further amendment would be futile, and dismissal with prejudice is appropriate.

**CONCLUSION**

Consequently, it is ORDERED that the Recommendation, D.E. 24, is ADOPTED as described above, and the motion to dismiss, D.E. 16, is GRANTED. This action is DISMISSED WITH PREJUDICE.

A Judgment will be entered contemporaneously with this Order.

This the 30th day of September, 2026.

*/s/ David A. Bragdon*
United States District Judge